655 So.2d 1156 (1995)
BARNETT BANK OF MARION COUNTY, N.A., Appellant/Cross-Appellee,
v.
Cecil Glennis SHIREY, Jr. and Patricia A. Shirey, etc., et al., Appellees/Cross-Appellants.
No. 93-1763.
District Court of Appeal of Florida, Fifth District.
April 28, 1995.
Rehearing Denied June 15, 1995.
*1157 David M. Wells and Barbara B. Slott, Mahoney, Adams & Criser, P.A., Jacksonville for appellant, cross-appellee.
Edward L. Scott of Scott, Gleason & Pope, P.A., and Mark D. Shelnutt, P.A., Ocala, for appellees, cross-appellants.
*1158 GRIFFIN, Judge.
Barnett Bank of Marion County, N.A. ("Barnett") appeals a judgment rendered below in favor of Cecil Glennis Shirey, Jr., Patricia A. Shirey, and Marion Auto Sales, Inc. ("Shireys"), and the Shireys cross-appeal. The judgment awarded the Shireys total damages of $1,377,000, which included damages of $406,000 each for breaches of two loan agreements; $65,000 for breach of fiduciary duty and $500,000 in punitive damages. We affirm the judgment and award of compensatory damages against Barnett for breach of fiduciary duty. The punitive damages for breach of fiduciary duty are reversed. We also reverse the judgment for breach of the second loan agreement and remand for retrial of damages for breach of the first loan agreement. The denial of the Shireys' claim for prejudgment interest is also reversed.
This case arose from two floor plan loan agreements that the Shireys entered into with Barnett for financing purchases of used vehicles which comprised the inventory of their business, Marion Auto Sales, Inc. The Shireys had been in the wholesale used car business for twenty-two years but in 1985 they decided to enter the field of retail sales of used cars, significantly expanding their business and moving to a new first-class location. In 1987, Barnett agreed to extend them floor plan credit of up to $250,000, using the current "black book" value to calculate loan advances on the cars to be purchased. The agreement was not for a specific term; it could be terminated by either party at any time.
Within the first year, in March 1988, Barnett changed its floor plan financing policy from using "black book" value for financing the purchase of used cars, to using NADA book value. This change caused the Shireys to receive smaller loans on the used cars they wanted to purchase for their inventory. The Shireys complained about this change and by October 1988, a new loan agreement calling for NADA valuation was entered into. The Shireys' core contention is that because they could not buy enough cars at the NADA value to maintain their inventory, their business began to decline.
When Mr. Shirey told Barnett he was reducing his inventory, Barnett made an on-site inspection, found certain floor plan discrepancies and terminated the second agreement. The bank also exercised its setoff rights and the business effectively ended. The Shireys managed to repay Barnett the outstanding loan balance of some $85,000. The mortgage held by Barnett on the business property was satisfied by sale of the property to a local businessman, Scott Randall. Two years later, when Barnett filed suit to foreclose on the Shireys' residential mortgage, the Shireys counterclaimed, claiming that Barnett was the cause of the loss of their business. The Shireys also sued Barnett for breach of fiduciary duty, claiming that Greg James, Barnett's employee, revealed confidential information of the Shireys' financial plight to Randall, which severely disadvantaged the Shireys in negotiating the sale of the business property.
Barnett first urges that the trial court committed reversible error by allowing the issue of punitive damages for breach of fiduciary duty by James to go to the jury. Barnett argues that there was no evidence of fault on the part of Barnett, which is required for an award of punitive damages against an employer under Florida law. This issue was hotly debated below and the trial judge was dubious. After several false starts, the Shireys settled on the argument that they had complained so much about the handling of their loans that Barnett should have known that Patterson, James' supervisor, was incompetent, adding that a memorandum in James' personnel file suggested Patterson was aware James had trouble with confidentiality. Schropp v. Crown Eurocars, Inc., 654 So.2d 1158 (Fla. 1995).
We agree with Barnett that the evidence was insufficient to show any negligence on its part that would support the punitive damage award. In the absence of some fault, an employer may not be held liable for punitive damages as the result of the misconduct of its employees. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 549 (Fla. 1981); S.H. Inv. & Dev. Corp. v. Kincaid, 495 So.2d 768, 772 (Fla. 5th DCA 1986), *1159 review denied, 504 So.2d 767 (Fla. 1987).
Greg James was one of the Barnett employees who principally handled the Shireys' banking relationship with Barnett. The Shireys introduced evidence showing that, during the time they were negotiating to sell their business property, James provided confidential financial information pertaining to the Shireys to the buyer, Randall. By having confidential information that the Shireys were in dire financial straits, Randall was able to negotiate a lower sale price.
The testimony reflected James' meetings with the buyer, during which these disclosures occurred, took place both during and after business hours. James told an associate of Randall that he was "going out on a limb" and would lose his job if it was revealed that he was disclosing the Shireys' financial position. James was apparently aware that Randall had a substantial trust and that his father was extremely wealthy. James expressed that if he could get Randall's father's money, it would be the largest trust movement in Barnett history and would elevate him to the top. James sought to persuade Randall to have the money moved to Barnett and to get James a meeting with Randall's father. James said Barnett would finance the purchase of the Shireys' property, and that he would assure Randall floor plan financing.
The Shireys urge that they presented sufficient evidence that Barnett's fault was that it knew or should have known James would disclose confidential customer information in October 1989. On appeal, the Shireys rely mainly on a December 1989 entry in James' "Officer Performance Review" which noted:
Greg understands the need to work on:
 Placing priority on activities  to not "major in the minors"  and to tackle first things first.
 Concentrate on confidentiality  learn the art of "the need to know," which in most cases means to keep things to one self [sic].
Patterson, James' supervisor and the author of this statement, testified that he was referring to the need to maintain confidences concerning Barnett's internal affairs, such as who was making what income, who was being promoted and the like.
The evidence presented below simply cannot support the conclusion that Barnett knew or should have known that James would breach Barnett's confidential relationship with the Shireys or was negligent in James' supervision. Accordingly, we strike the award of punitive damages in the amount of $500,000. We do agree, however, with the Shireys that prejudgment interest should have been awarded on this breach of fiduciary duty award from the date of the sale of the real property. Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985).
We also agree in part with Barnett's attack on the judgments for breach of the two loan agreements. There was substantial competent evidence of breach of the first agreement. Ten months into the first floor plan loan agreement, contrary to its express provisions, Barnett Bank unilaterally decided to change from "black book" to NADA for purposes of calculating loan advances. It appears without substantial dispute in the record that in the period between March 1988 and October 19, 1988, when the second loan agreement calling for NADA valuation was entered into, Barnett Bank loaned an aggregate total of $22,000 on used cars less than what it had agreed to loan. There is no merit in Barnett's argument, either in law or in fact, that the second loan agreement constituted a novation that would preclude a cause of action for breach of the first agreement.
The problem, however, is with the consequences of Barnett's breach. The damage theory of the Shireys was that the value of Marion Auto Sales, Inc., as an ongoing business, immediately prior to the bank's initial breach in March 1988, when it changed its loan calculation method from black book to NADA, was $812,000. According to the plaintiff, as a result of the bank's breach, the business was destroyed completely, resulting in a loss to the Shireys of $812,000. The jury apparently accepted that calculation but elected to divide this amount in half, awarding $406,000 for breach of the first agreement *1160 and $406,000 for breach of the second agreement. This was an understandable thing for the jury to do, faced with the complexities of the case presented to them, but it was a mistake, nevertheless. This mistake matters because there is simply no substantial competent evidence in the record that Barnett Bank ever materially breached the second loan agreement. In early 1989, finding discrepancies in the floor plan and deeming itself insecure, Barnett terminated the second agreement and exercised its collateral rights. It is abundantly clear from the record  indeed, it seems essential to the Shireys' damage theory  that Barnett Bank clearly was insecure, nor did it breach the second loan agreement in terminating it.[1]
This brings us back to Barnett's breach of the first agreement to loan at black book value. There is no basis in the record for the $406,000 damage award due to the breach of the first agreement.[2] More important, we can find no record basis to conclude that this business was entirely destroyed solely because Barnett failed to loan an aggregate total of $22,000 between March and October 1988. Each time the bank breached its agreement by loaning only NADA value, had Marion Auto Sales, Inc. had the money to do so, it would have had to fund the difference, and the business would have proceeded until it had succeeded in enforcing its rights. The record is clear that Marion Auto Sales, Inc. did, in fact, have the money.[3] Thus, although in a proper case, the bank's failure to loan as promised could destroy such a business entirely, there is no record basis for a finding that the entire value of this business could have been lost based on the refusal to loan at black book value from March to October. Because of these errors, it is appropriate to remand for a new trial on the issue of damages for breach of the first agreement. Barnett is entitled to a directed verdict on the issue of the breach of the second agreement.
As for the issue of the jury trial waiver, although the record is sparse, there is evidence in the record that would have justified the lower court's ruling.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
DAUKSCH, J., concurs.
THOMPSON, J., concurs in part; dissents in part, with opinion.
THOMPSON, Judge, concurring in part, dissenting in part.
I agree with the opinion of this court except for the holding that "there is no record basis for a finding that the entire value of this business could have been lost based on the refusal to loan at black book value from March to October." This holding is the basis for the reversal of count one for a new trial on the issue of damages. I disagree because there was competent substantial evidence to prove that the Shireys suffered damages and that the damages flowed from Barnett's breach.
The Shireys presented expert testimony from Dr. Hank Fishkind as to the valuation of the business. He used the income approach to estimate Marion Auto's value as an ongoing business because the income approach was the most appropriate to the situation. Trailer Ranch, Inc. v. Levine, 523 So.2d 629, 631 (Fla. 4th DCA 1988) (recovery *1161 for loss of business venture is to be measured either by lost profits or loss of business value, but not both). Using the income approach, he estimated that the value of Marion Auto at a point in time just prior to the alleged breach of the first agreement was $812,000. As Dr. Fishkind was qualified as an expert, the jury could accept or reject his testimony. See § 90.702, Fla. Stat. (1991). Dr. Fishkind testified to the valuation of the business and the resulting loss because of Barnett's failure to provide the additional $22,000 under the black book loan value of the first agreement. Evidently, the jury accepted his testimony.
Further, the Shireys presented evidence that Barnett froze all of their bank accounts. Thus, the Shireys were forced to satisfy the floor plan agreement with funds from selling the automobiles remaining in the inventory, borrowing money from relatives, and using money from the balance of a CD in Barnett's possession. The jury could consider this additional information to determine that Barnett caused the Shireys to lose their business. I would hold that there was a basis for the award of $406,000 in damages for the loss of the entire business. The figure represents only one-half the value of Marion Auto as an ongoing business just prior to the breach of the first agreement.
It could be anticipated that damages would flow from Barnett's breach of the agreement. Here, the Shireys proved that Barnett's actions caused their damages, and Dr. Fishkind presented a standard by which the amount of damages could be measured. Because there is a reasonable relationship between the jury award of damages and the damages proved and the injuries sustained, the jury verdict should not be disturbed. Allred v. Chittenden Pool Supply, Inc., 298 So.2d 361 (Fla. 1974); accord Saporito v. Madras, 576 So.2d 1342 (Fla. 5th DCA 1991). Therefore, I would affirm the jury's verdict as to count one because there is competent substantial evidence that Barnett's actions destroyed the Shireys' business and that the damages were $406,000.
NOTES
[1] At trial, the Shireys principally argued to the jury that the breach was the failure to give a five day notice under the collateral disposition provision of the loan agreement. On appeal, the Shireys are even less clear about what they contend was the breach of the second agreement. They speak of undue "control" of the Shireys' business and Barnett's appearance at the dealership in April 1985 demanding the inventory, but neither of these is even close to being legally sufficient under the facts or Florida law.
[2] There was much discussion below and on appeal about the identity of the borrowers on the two loan agreements, which, given our disposition on the issues, is immaterial. We are puzzled, however, based on our understanding of the Shireys' expert's valuation of the business, as to whether it included or assumed the ownership of the business premises. The $65,000 loss upon sale was included by the expert but the recovery of equity from the sale of the business was not included. After reviewing the testimony, however, we simply cannot determine whether this was a mistake, much less an error.
[3] Are you going to answer my question whether you had the money in the business to pay the difference between black book and NADA loan?
A: Yes, sir. I had the money to do that.