**Bernard COMBE, et al., Plaintiffs,**

v.

**FLOCAR INVESTMENT GROUP CORP., et al., Defendant.**

**Case No. 1:13–cv–22727–UU.**

United States District Court, S.D. Florida.

Oct. 9, 2013.

**1303**

Complaint, D.E. 17, filed on August 30, 2013. Plaintiff filed his Response, D.E. 22, on September 26, 2013. The time for filing a reply brief has passed. Therefore, this Motion is now ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. Defendants argue that the Complaint should be dismissed in its entirety for failure to join indispensable parties, and also asserts various grounds for dismissing each individual count. For the reasons set for below, the Court denies Defendants' Motion with respect to all but one count of the Complaint.

## BACKGROUND

This suit concerns allegations of repeated real-estate fraud. Plaintiffs Bernard and Sylvie Combe are residents of Nice, France. D.E. 1 ¶¶ 4–5. Defendant Flocar Investment Group Corp. ("Flocar") is a Florida corporation with its principal place of business in Miami, Florida. *Id.* ¶ 6. Resco International LLC ("Resco") is a Florida limited liability company with its principal place of business in Miami, Florida. *Id.* ¶ 7. Finance Industry Corporation ("Finance Industry") is a Delaware corporation with its principal place of business in Miami, Florida—however, Plaintiffs allege that Finance Industry fraudulently holds itself out as a Florida corporation licensed to do business in this state. *Id.* ¶ 8. Defendant FIG Management ("FIG") is a Florida limited liability company which its principal place of business in Miami, Florida. *Id.* ¶ 9. Defendant Delma Koessler is a resident of Florida and a licensed real estate broker. *Id.* ¶ 10. Defendant Robert Koessler is also a resident of Florida. *Id.* ¶ 11. According to Plaintiffs, the Koessler Defendants are the owners of Flocar, the managing members Resco and FIG, and the sole shareholders of Finance

Gary Dean Farmer, Jr., Hinshaw & Culbertson LLP, Fort Lauderdale, FL, for Plaintiffs.

Paul A. McKenna, Paul A. McKenna, Coral Gables, FL, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiff's

Industry. They are, in other words, the orchestrators of the fraudulent scheme alleged in the Complaint.

Plaintiffs are French citizens who sought to invest their savings in American real estate. *Id.* ¶ 12. Plaintiffs allege that the Koessler Defendants, through the various entities under their ownership and control, perpetrated a scheme that involved purported sales of real property, conflicts of interest, undisclosed mortgages, and unrecorded deeds on properties that the Koessler Defendants owned and induced Plaintiffs to buy. *Id.* ¶ 13. Plaintiffs allege that once they purchased the subject properties, Defendants, through FIG, collected thousands of dollars in rent money for over a year, without ever delivering said money to Plaintiffs. *Id.* ¶ 14. Plaintiffs first contacted the Koessler Defendants in 2011 and, over the course of 2012, Plaintiffs signed purchase contracts for four different properties through Flocar. *Id.* ¶¶ 15–17. Plaintiffs eventually sent over $600,000 to Flocar, Resco, and Finance Industry. *Id.* ¶ 20.

The Complaint extensively details the facts underlying each real estate transaction, which the Court will briefly summarize. In April or May of 2012, Plaintiffs paid approximately $145,000 for the purchase of the property at 18452 Heather Road, Fort Meyers, FL from Resco, with Flocar acting as broker. *Id.* ¶ 21. Neither Flocar, nor Resco, nor the Koesslers ever disclosed to Plaintiff that in 2010 Resco, through its principals, the Koesslers, had recorded a mortgage on the property in favor of another party for $42,500. *Id.* ¶ 24. When the deed was finally recorded nearly a year later, Defendants only recorded a quitclaim deed, rather than the warranty deed Plaintiffs had expected. *Id.* ¶ 26.

In September 2012, Plaintiffs entered into a contract to purchase the property 8967 SW 225 Street, Cutler Bay, FL from Resco, with Flocar as agent, paying approximately $158,000 for the property. *Id.* ¶ 27. Again, only a quitclaim deed was ever recorded. *Id.* ¶ 28. In April 2012, Plaintiff Bernard Combe purportedly purchased property at 22079 SW 92 Place, Miami, FL from Finance Industry, with Flocar acting as agent, paying approximately $190,000. *Id.* ¶ 29. Defendants never delivered a deed to Plaintiff, and no such deed has been recorded. *Id.* ¶ 33. Moreover, eleven days prior to the purported sale, Finance Industry recorded a mortgage on that same property in favor of another party for $62,500, and failed to disclose that mortgage. *Id.* ¶¶ 35–36. In August 2012, Plaintiffs entered into a contract for a property at 21943 SW 88 Path, Miami, FL, paying approximately $158,000. *Id.* ¶¶ 38–39. Rather than closing on that sale, Flocar insisted that the money could be used for purchase of an equivalent property in the same subdivision—no such purchase has been made to date. *Id.* ¶ 40.

Defendants had an understanding with Plaintiffs pursuant to which Defendants' property management entity, FIG, would be responsible for leasing the property to tenants, collecting rent, and taking care of maintenance. *Id.* ¶ 41. FIG has collected taxes and insurance premiums from Plaintiffs for the subject properties, and has collected rent for the properties. *Id.* ¶ 42. Plaintiff allege that FIG has sent Plaintiffs account statements showing rents being collected that are lower than previously agreed to, and several questionable expenses deducted by FIG. *Id.* 143. Furthermore, to date, Plaintiff has yet to receive one cent of the rental income that FIG claims to have collected. *Id.* 144.

## LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a

short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937.

## DISCUSSION

### A. Plaintiff did not fail to join indispensable parties

▬ Defendants move to dismiss the Complaint in its entirety for failure to join the "settlement/escrow agents" supposedly associated with the subject real-estate transactions. Defendants list these supposed agents in their Motion, but they are nowhere mentioned in the Complaint. Nor do Plaintiffs' claims depend in any way on the actions or inactions of these supposed agents. Each count alleges some injurious action or inaction by one or more of the named Defendants themselves, and not absent third-parties. Federal Rule of Civil Procedure 19(a) makes mandatory the joinder of certain parties. A party must be joined if, "in that person's absence, the court cannot accord complete relief among existing parties," Fed. R.Civ.P. 19(a)(1)(A), or "that person claims an interest relating to the subject of the action is so situated that disposing of the action in the person's absence may" work a prejudice on an absent or named party, Fed.R.Civ.P. 19(a)(1)(B). Defendants have not explained why the court cannot accord complete relief among the parties in these supposed agents' absence. Nor do Defendants suggest that these absent parties claim a legitimate interest in the real-estate transactions that are the subject of this action. This basis for the Motion is therefore rejected.

### B. Fraud-based counts

▬ Plaintiffs brings against various Defendants two counts of fraud in the inducement (Counts I and IV), two counts of fraudulent misrepresentation (Counts III and VI), and one count of civil conspiracy to, *inter alia,* commit fraud (Count XV). Defendants move to dismiss these counts for failure to plead fraud with the level of particularity required by Federal Rule of Civil Procedure 9(b). Pursuant to that rule, "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To satis-

fy Rule 9(b), a plaintiff must establish the who, what, when, where, and how of a fraud. *See Mizarro v. Home Depot, Inc.,* 544 F.3d 1230, 1237 (11th Cir.2008). But the application of Rule 9(b) is not intended to abrogate the concept of notice pleading. *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001). Rather, the purpose of the heightened pleading standard for fraud is to give the defendant notice of the claims brought against it, to protect the defendant from harm to its reputation, and to prevent plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. *Zarrella v. Pac. Life Ins. Co.,* 809 F.Supp.2d 1357, 1366 (S.D.Fla.2011).

Plaintiff's five counts grounded in common-law fraud all satisfy the particularity requirements of Rule 9(b). Each count is tied to a specific real estate transaction, and the alleged facts underlying each real estate transaction are pled in detail. *See* D.E. 1 ¶¶ 21–40. Defendants do not (and cannot) concretely specify any way in which Plaintiff's fraud-based counts fail the Eleventh Circuit's "who, what, when where, and how" test for Rule 9(b) pleading. Instead, Defendants argue that Plaintiffs have filed a shotgun pleading in which every allegation is incorporated by reference into each subsequent claim, making it impossible for them to properly respond. Nonsense. The fraud counts do not incorporate every preceding allegation, but only those in the first 44 paragraphs. These paragraphs, in turn, are grouped by transaction and, in some instances, by particular defendant. Each individual count also specifies the pertinent transaction and identifies the Defendants against whom the claim is lodged. The Defendants' assertion that it is impossible for them to properly respond to each count can hardly be taken seriously. Counts I, III, IV, VI, and XV are therefore properly stated.

## C. FDUTPA

Defendants move to dismiss Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.,* on the grounds that it is not pleaded with particularity under Federal Rule of Civil Procedure 9(b), and that its damages clause is conclusory. Assuming that Rule 9(b) applies to this FDUTPA count, the Court rejects Plaintiffs' argument for the same reasons discussed above with respect to the common-law fraud-based counts. As for the second basis for dismissal, Defendants hang their collective hat on the distinguishable case of *Jovine v. Abbott Laboratories, Inc.,* 795 F.Supp.2d 1331 (S.D.Fla. 2011). The Plaintiff in *Jovine* had a damages clause for his FDUTPA count similar to the one in the instant Complaint, which reads: "Plaintiffs demand judgment and damages, interest, reasonable attorney's fees, costs, and such other relief that this Court deems just and proper." D.E. 1 ¶ 105. The court in *Jovine* found this sort of clause to be inadequate in light of the facts particular to that case. First, the court found that, to the extent the plaintiff sought purchase-price damages for the defective product at issue, he defeated his own claim by alleging that the defendants issued a voluntary recall whereby the purchase price would have been returned to him. *Jovine,* 795 F.Supp.2d at 1344. Second, the court held that to the extent the plaintiff sought actual damages beyond the purchase price, such damages were barred by a FDUTPA provision limiting actual damages in cases involving "personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction." *Id.* (quoting Fla. Stat. § 501.212(3)). None of these circumstances are present in this case. Count X is therefore properly stated.

## D. Breach of fiduciary duty

Plaintiff brings one claim for breach of fiduciary duty against Flocar, Delma Koessler, and Robert Koessler in their capacities as real estate brokers (Count VIII), and another claim for breach of fiduciary duty against FIG in its capacity as property manager (Count IX). The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *See Gracey v. Eaker*, 837 So.2d 348, 353 (Fla.2002). Defendants argue that they were not Plaintiffs' fiduciaries and therefore did not owe them any fiduciary duties.

Although the common law did recognize a fiduciary relationship between transaction brokers and their clients, Florida Statutes § 475.278 replaced the common law fiduciary duty with a more narrowly-defined set of statutory duties. *Burchfield v. Realty Execs.*, 971 So.2d 138, 140 (Fla.Dist.Ct.App.2007). The statute reads: "A transaction broker provides a limited form of representation to a buyer, a seller, or both in a real estate transaction, but does not represent either in a fiduciary capacity or as a single agent." Fla. Stat. § 475.278(2). It also states: "It shall be presumed that all licensees are operating as transaction brokers unless a single agent or no brokerage relationship is established, in writing, with a customer." Fla. Stat. § 475.278(1)(b). Plaintiff alleges no such written agreement, and indeed the form residential purchase contract signed by the parties "releases Broker ... from all liability from loss or damage ... beyond the scope of services regulated by Chapter 475, F.S." D.E. 1–5 ¶ 14. This language does not immunize Defendants from fraud charges, but it does confirm that their responsibilities as brokers are defined by this statute enacted in 1997, rather than by the common law. Count VIII is thus dismissed.

Property managers, however, have not been immunized from suit for breach of fiduciary duty. Chapter 475 of the Florida Statutes "regulate[s] real estate brokers, sales associates, and schools." Fla. Stat. § 475.001. To establish a general fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party. *Orlinsky v. Patraka*, 971 So.2d 796, 800 (Fla.Dist.Ct.App.2007). It is not essential that the undertaking be related to advice-giving, but an essential aspect is that there be a level of "trust and confidence" inherent in the relationship. *See Greenacre Props., Inc. v. Rao*, 933 So.2d 19, 26 (Fla.Dist.Ct.App.2006) (citing *Doe v. Evans*, 814 So.2d 370, 374 (Fla. 2002)); *see also Restatement (Second) of Torts* § 874 cmt. a (1979) ("A fiduciary relationship exists between two persons when one of them is under a duty to act ... for the benefit of another upon matters within the scope of that relation."). Plaintiffs allege that they "reposed trust and confidence in Defendants and Defendant [FIG] undertook such trust." D.E. 1 ¶ 99. They allege that FIG breached its fiduciary duty "by, among other things, failing to remit to Plaintiffs rental money due to them, failure to give proper and timely information as to the status of rental income and expenses, and charging unnecessary expenses." *Id.* ¶ 100. These allegations sufficiently plead a fiduciary relationship between FIG and Plaintiffs—who reside in France and were therefore totally dependent on FIG for matters involving rent collection and property management. Plaintiffs may thus pursue their breach of fiduciary duty claim against FIG.

## E. Accounting (Count XIII)

Plaintiffs bring an equitable claim of accounting against FIG only. De-

fendant moves to dismiss this count on the grounds that there is no basis for equitable jurisdiction and because Plaintiffs have as much knowledge concerning any alleged debt as Defendants. Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must plead the inadequacy of a legal remedy. *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir.1990). The Court has already held that Plaintiffs have properly alleged a fiduciary relationship between FIG and themselves, so that part of the equation has been satisfied.

Plaintiffs' allegations also make clear why a legal remedy would be inadequate. Plaintiff's grouping of allegations concerning "FIG Management's Role," D.E. 1 ¶¶ 41–44, explain that FIG was responsible for account management with respect to the subject rental properties. FIG was not charged solely with collecting the rent and executing management decisions made by Plaintiffs, but rather was charged with managing the property themselves. Therefore, the amount recoverable by Plaintiffs is not as much within their knowledge as within FIG's such that a straightforward prayer for damages might suffice. Count XIII is therefore properly stated.

#### F. Conversion

■ Plaintiffs bring their conversion claim (Count XIV) against all Defendants except for FIG, alleging that Defendants converted to their own use Plaintiffs' money for the purported purchase of real estate. Defendants argue that the money in question is not property subject to a claim for conversion. Florida courts have long held that when money is the subject of claims for conversion, there must have been an obligation to keep intact or deliver the specific money in question, so that the

money can be identified. *See Gasparini v. Pordomingo*, 972 So.2d 1053, 1056 (Fla. Dist.Ct.App.2008) (citing *Futch v. Head*, 511 So.2d 314, 320 (Fla.Dist.Ct.App.1987)). Conversion may be properly charged where, for example, the money was set aside in a trust or escrow account. *Id.* In this action, the money for purported purchases of real estate was to be deposited in an escrow account. *See* D.E. 1–5 ¶ 2. Plaintiffs demand return of those deposited funds. The subject of this claim is therefore within the ambit of money that may be converted, and Plaintiffs have properly stated a conversion claim to recover said money.

Accordingly, it is

ORDERED AND ADJUDGED that the Motion to Dismiss, D.E. 11, is GRANTED IN PART and DENIED IN PART. It is GRANTED as follows: Count VIII is DISMISSED WITH PREJUDICE. The Motion is DENIED in all other respects. It is further

ORDERED AND ADJUDGED that Defendants SHALL file an answer to the remaining counts within ten days of this Order's issuance.